**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Creekside Associates, Ltd., | : | Case No. 14-_____ |
| | : | |
| Debtor. | : | |

**MOTION OF DEBTOR CREEKSIDE ASSOCIATES, LTD.**
**FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

Creekside Associates, Ltd. (the "Debtor"), debtor and debtor-in-possession, by and through its undersigned counsel, hereby respectfully moves (this "Motion") this Court for entry of an Order authorizing the use of cash collateral pursuant to 11 U.S.C. §§ 363(c) and 542(a) and, in support thereof, avers as follows:

**I.    FACTUAL BACKGROUND**

1. On December 19, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor owns and operates the property known as Creekside Apartments, a 1000+ unit apartment complex located at 2500 Knights Road, Bensalem, Pennsylvania (the "Property").

3. On or about July 12, 2005, the Debtor executed a promissory note (the "Note") in the principal amount of $68 million (the "Loan") in favor of Eurohypo AG, New York Branch ("Eurohypo").

4. As security for the Loan, the Debtor also executed an Open-End Mortgage and Assignment of Rents and Fixture Filing (the "Mortgage"). The Note, Mortgage and other

1

documents executed between the Debtor and Eurohypo are collectively referred to as the "Loan Documents."

5. Eurohypo subsequently transferred its interest in the Loan and the Loan Documents to Wells Fargo Bank, N.A. as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-LDP4 ("Wells Fargo").

6. Wells Fargo subsequently transferred its interest in the Loan and the Loan Documents to Creekside JV Owner, LP (the "Lender"), an entity formed by Davidson Kempner Capital Management LLC and Morgan Properties to acquire the Loan.

7. Upon information and belief, based on the Loan Documents the Lender asserts security interests in and/or liens on the Debtor's operating revenues (the "Cash Collateral") as cash collateral pursuant to 11 U.S.C. §§ 363 and 552(b)(2).

## II. RELIEF REQUESTED

8. In accordance with Section 363(c)(2)(B) of the Bankruptcy Code, the Debtor hereby requests that this Court authorize and approve the use of cash collateral for the payment of its operating expenses as set forth in the budget attached hereto as <u>Exhibit A</u> (the "Initial Budget") until a further hearing is scheduled regarding this Motion.[1]  In order to effectuate its reorganization and maximize the recovery to creditors, the Debtor must be permitted to use the Cash Collateral in its ordinary business operations.  The Debtor believes the expenses listed on the Initial Budget represent the minimum reasonable and necessary business expenses which must be paid in order for Creekside Apartments to remain in business.

---

[1] The Initial Budget includes amounts budgeted for quarterly bankruptcy fees for the United States Trustee (the "Trustee Fees").  Notwithstanding anything above or in the Initial Budget, the Debtor seeks authority to pay the actual amounts owing on account of such Trustee Fees as and when due.

2

### A. Use of Cash Collateral Should Be Permitted Because the Lender will be Adequately Protected.

9. The Bankruptcy Code permits a debtor to use cash collateral only if each entity having an interest in the cash collateral consents, or the court authorizes such use after notice and a hearing. 11 U.S.C. § 363(c)(2). On the request of an entity having an interest in the cash collateral, the court must prohibit or condition its use "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

10. Section 361 of the Bankruptcy Code provides a non-exclusive list of means by which a debtor may provide an entity with adequate protection of its interest in cash collateral:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

11. The determination of whether a creditor's interests are adequately protected under 11 U.S.C. § 361 requires "a particular focus upon the value of the collateral," and "the likelihood that it will depreciate or appreciate over time." *In re TM Carlton House Partners, Ltd.*, 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (quoting *In re Tashjian,* 72 B.R. 968, 973 (Bankr. E.D. Pa. 1987)).

3

117977831_1

12. Because the Cash Collateral consists of rents from an apartment building, Section 552(b) of the Bankruptcy Code applies, such that the Lender's pre-petition liens would attach to the Debtor's post-petition revenues. Accordingly, the Cash Collateral is constantly being replenished by rental income received each month. Moreover, because the Debtor operates an apartment building with yearly leases, its monthly income is generally steady from month to month—as are its ordinary operating costs. Because of this—and as reflected in Exhibit A—the Debtor's cash position remains relatively stable during the budget period.

13. The ongoing business operations of the Property are essential to the preservation of the Cash Collateral and the underlying value of the Property. The value of the Property is significantly higher at present as an operating entity than if the Property were to close. Accordingly, the use of cash collateral is necessary for the Debtor to preserve the going concern value of Creekside Apartments, which in turn benefits the Lender.

14. The Debtor also believes that the Lender is adequately protected by the value of the Property itself. While the value of the Property is undetermined at this time, the Property is well-managed, well-maintained and presently has a high occupancy rate. The value of the Property will likely appreciate, or at least remain stable, during the cash collateral period.

15. Finally, the Debtor is proposing to make monthly interest payments to the Lender at the contract rate of interest. As shown in Exhibit A, these payments will be approximately $300,000 per month and will be made mid-month.

16. The Debtor submits that the measures described herein constitute adequate protection pursuant to Section 361 of the Bankruptcy Code sufficient to protect the Lender against limited risk of any diminution in the value of any interest it has in the Cash Collateral. Because the Property's normal operations, if allowed to continue uninterrupted, will perpetually

re-generate the revenue that funds those operations, it is clear that permitting the Debtor to use cash collateral will only redound to the Lender's benefit.

17. In the event this Court does not authorize the Debtor's use of cash collateral, the Debtor will be unable to maintain its operations and propose a plan as contemplated by the Bankruptcy Code. Without the use of cash collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to creditors.

III. **NOTICE**

18. The Debtor has provided notice of this Motion to (a) the Office of the United States Trustee; (b) the Commonwealth of Pennsylvania Department of Labor and Industry; (c) the City of Philadelphia; (d) counsel for any secured creditors believed to be claiming an interest in the cash collateral; (e) the Internal Revenue Service; (f) the Pennsylvania Department of Revenue; (g) the twenty (20) largest unsecured creditors; and (h) those parties requesting notice pursuant to Federal Rule of Bankruptcy Procedure 2002 by overnight mail, e-mail, facsimile or hand delivery.

117977831_1

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order pursuant to 11 U.S.C. § 363 (c)(2)(B) (i) authorizing the Debtor to use cash collateral for its general ongoing business operations as described in this Motion and the budget attached hereto as Exhibit A; (ii) scheduling a further hearing regarding entry of a Final Order authorizing the use of cash collateral; and (iii) granting the Debtor such other relief as may be proper and just.

Dated: December 19, 2014                    **DILWORTH PAXSON LLP**

By: /s/ Jennifer L. Maleski
Lawrence G. McMichael
Jennifer L. Maleski
Jesse N. Silverman
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Proposed Counsel for the Debtor*