# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Creekside Associates, Ltd.,** | : | **Case No. 14-19952 (SR)** |
| | : | |
| **Debtor.** | : | |
| | : | |

## ~~FIRST~~SECOND AMENDED PLAN OF REORGANIZATION OF CREEKSIDE ASSOCIATES, LTD.

### Dated:  June ~~5,~~11, 2015

### AS PROPOSED BY THE DEBTOR

**DILWORTH PAXSON LLP**
Lawrence G. McMichael, Esquire
Jennifer L. Maleski, Esquire
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7000

Attorneys for the Debtor

## ARTICLE I.  - DEFINITIONS

**1.1.    Administrative Claim:**  A claim under Section 503 of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) and (3) of the Bankruptcy Code.

**1.2.    Administrative Claims Bar Date:**  Shall have the meaning assigned in section 7.8 of this Plan.

**1.3.    Allowed:**  The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which: (i) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this Chapter 11 Case as of the Confirmation Date and not listed therein as disputed, contingent or unliquidated; (ii) is set forth in a Proof of Claim or Interest properly filed in this Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof and as to which no objection is timely filed; (iii) is determined to be Allowed in a Final Order; or (iv) with respect to the Lender, as set forth in this Plan.

**1.4.    Assumed Contracts:**  Shall have the meaning assigned in section 7.4(b) of this Plan.

**1.5.    Bankruptcy Code:**  The United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

**1.6.    Bankruptcy Court:**  The United States Bankruptcy Court for the Eastern District of Pennsylvania.

**1.7.    Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Eastern District of Pennsylvania, as each is in effect on the Confirmation Date.

**1.8.    BCWSA:**  The Bucks County Water & Sewer Authority.

118206595_2
118213401_1

**1.9.    BCWSA Escrow Account:**  The escrow account established by the Debtor in the initial sum of $825,000 pursuant to the agreement evidenced by the correspondence between the Debtor and BCWSA attached hereto as Exhibit A.

**1.10.    Cash:**  For purposes of the payment to the Lender under Section 3.2(a)(i), "Cash" shall mean any wire or bank transfer of immediately available funds.  For purposes of payments to any other Claimant under this Plan, "Cash" shall mean any transfer by wire, check or other bank transfer, at the Debtor's option.

**1.11.    Chapter 11 Case:**  The Debtor's case under Chapter 11 of the Bankruptcy Code which was commenced by the filing of a voluntary petition with the Bankruptcy Court on December 19, 2014.

**1.12.    Claim:**  A claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code.

**1.13.    Claimant:**  A person or entity holding a Claim or Interest (including his, her or its successors, assigns, heirs, executors or personal representatives).

**1.14.    Collateral:**  The collateral securing the Note, as defined in the Mortgage and as further set forth in the Security Documents.

**1.15.    Confirmation:**  The entry by the Bankruptcy Court of an order confirming this Plan.

**1.16.    Confirmation Date:**  The date on which the order confirming this Plan is entered by the Court.

**1.17.    Confirmation Order:**  The order entered by the Bankruptcy Court confirming this Plan.

**1.18.    Debtor or Reorganized Debtor:**  Creekside Associates, Ltd.

3

1.19.   **Deeds**:   The deeds and instruments of property transfer described in section 3.2(a)(ii) of this Plan.

1.20.   **Disclosure Statement:**   The Disclosure Statement of the Debtor filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code, as amended from time to time.

1.21.   **Disputed Claim:**   Any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to, in whole or in part, before the Effective Date, other than the Lender Claim.

1.22.   **Effective Date:**   The Effective Date shall be either: (a) the date that payment is made to the Lender pursuant to Section 3.2(a)(i) hereof; or (b) the date that the Settlement Property is transferred to the Lender pursuant to Section 3.2(a)(ii) hereof, which, in either case, shall be no later than 90eighty-three (83) days after the Confirmation Date.  The Debtor intends that the time periods set forth in the Plan will be strictly construed and applied.

1.23.   **Election Date:**   The date fixed by the Bankruptcy Court as the last day for submitting a vote on the Plan.

1.24.   **Eurohypo:**  Eurohypo AG, New York Branch.

**1.25.**   **Exit Financing Facility:**   That certain new $65 million term loan to be made pursuant to the terms of the Exit Financing Facility Agreement if the Debtor elects the Payment Option under Section 3.2(a)(i).

**1.26.**   **Exit Financing Facility Agreement:**  That certain credit agreement to be entered into on the Effective Date, should the Debtor elect the Payment Option under Section 3.2(a)(i), by and among the Reorganized Debtor, as borrower, and the Exit Financing Facility Lender, together with all amendments, supplements, ancillary agreements, notes, pledges, collateral agreements and other documents related thereto, which shall be in form and substance reasonably satisfactory

4

118206595_2
118213401_1

to the Debtor and the Exit Financing Facility Lender and shall provide for the Exit Financing Facility.

**1.27.** **Exit Financing Facility Lender:** LoanCore Capital or its affiliate.

**1.28.** ~~1.25.~~ **Final Order:** An order, judgment or other decree issued by the Bankruptcy Court and entered on its docket that has not been reversed, stayed, modified or appealed, and as to which the time to appeal, petition for a certiorari, or file a motion for reconsideration has expired, or any such notice, petition, or motion has been withdrawn, as a result of which such order shall have become final and non-appealable in accordance with Bankruptcy Rule 8002.

**1.29.** ~~1.26.~~ **Insider:** Any "insider" as that term is defined by of Section 101(31) of the Bankruptcy Code.

**1.30.** ~~1.27.~~ **Interest:** An equity interest in the Debtor or the right to acquire the same including, without limitation, as a holder of a right to acquire any interest.

**1.31.** ~~1.28.~~ **Lender:** JV Creekside Owner, LP, or its successor or assigns.

**1.32.** ~~1.29.~~ **Lender Claim:** The Claim of the Lender, as set forth in Proof of Claim number 13 filed with the Bankruptcy Court by the Lender on March 27, 2015, including all liens securing such Claim, including any post-petition amounts accruing on such Claim.

**1.33.** ~~1.30.~~ **Lien Release Documents:** Shall have the meaning assigned in Section 3.2(a)(i).

**1.34.** ~~1.31.~~ **Loan Agreement:** That certain Loan Agreement, dated as of July 12, 2005, between the Debtor and Eurohypo.

**1.35.** ~~1.32.~~ **Mortgage:** Collectively, that certain (a) Open-End Mortgage and Assignment of Rents and Fixture Filing dated July 12, 2005 from Debtor to Eurohypo AG, New York Branch, and granted by the Debtor in favor of Eurohypo, relating to the Property as more

5

particularly described therein, and recorded in the Office of the Bucks County Recorder of Deeds on July 25, 2005 in Land Record Book 4545, page 2322, as assigned pursuant to that certain (i) Assignment of Open-End Mortgage and Assignment of Rents and Fixture Filing, dated September 11, 2007, executed by Eurohypo in favor of Wells Fargo and recorded in the Office of the Bucks County Recorder of Deeds on February 5, 2008 in Land Record Book 5689, page 1540 and (ii) Assignment of Mortgage, dated December 23, 2011, executed by Wells Fargo in favor of the Lender and recorded in the Office of the Bucks County Recorder of Deeds on December 23, 2011 in Land Record Book 6898, page 1481; and (b) Assignment of Leases and Rents dated as of June 16, 2005 and Effective as of July 12, 2005 from the Debtor to Eurohypo, relating to the Property as more particularly described therein, and recorded in the Office of the Bucks County Recorder of Deeds on July 25, 2005 in Land Record Book 4545, page 2197, as assigned pursuant to that certain (i) Assignment of Leases and Rents, dated September 11, 2007, executed by Eurohypo in favor of Wells Fargo and recorded in the Office of the Bucks County Recorder of Deeds on February 5, 2008 in Land Record Book 5689, page 1538, and (ii) Assignment of Leases and Rents, dated December 23, 2011, executed by Wells Fargo in favor of the Lender and recorded in the Office of the Bucks County Recorder of Deeds on December 23, 2011 in Land Record Book 6898, page 1496.

**1.36.** **1.33. Mutual Release:** Shall have the meaning assigned in section 3.2 of this Plan.

**1.37.** **1.34. Note:** Promissory Note dated July 12, 2005 from the Debtor to Eurohypo AG, New York Branch, as assigned pursuant to that certain (i) Allonge, dated September 11, 2007, assigning the Promissory Note (and all rights under the Promissory Note and the Loan Agreement) from Eurohypo to Wells Fargo and (ii) Allonge, dated December 23, 2011, assigning the

6

Promissory Note (and all rights under the Promissory Note and the Loan Agreement) from Wells Fargo to the Lender.

**1.38.**    ~~1.35.~~ **Payment Amount:**  Shall have the meaning assigned in section 3.2(a) of this Plan.

**1.39.**    ~~1.36.~~ **Payment Date:**  The date that is no later than ~~ninety (90~~eighty-three (83) days after the Confirmation Date.

**1.40.**    ~~1.37.~~ **Payment Option:**  Shall have the meaning assigned in section 3.2(a)(i) of this Plan.

**1.41.**    ~~1.38.~~ **Petition:**  The voluntary petition initiating this Chapter 11 Case.

**1.42.**    ~~1.39.~~ **Petition Date:**  December 19, 2014.

**1.43.**    ~~1.40.~~ **Plan:**  The Plan of Reorganization of Creekside Associates, Ltd., dated May 15, 2014, as may be amended or modified, including the Exhibits hereto. References to Exhibits hereto shall include such Exhibits as they may be amended from time to time in accordance with their terms.

**1.44.**    ~~1.41.~~ **Priority Claim:**  The Claims entitled to priority under Sections 507(a), other than Claims entitled to priority under Section 507(a)(2) and classified in Class 1 hereof.

**1.45.**    ~~1.42.~~ **Professional Fee Claims:**  Shall have the meaning assigned in section 7.8 of this Plan.

**1.46.**    ~~1.43.~~ **Property:**  Collectively, certain real and personal property, and the improvements thereon, owned by Debtor and known as Creekside Apartments, consisting of, inter alia, a 1000+ unit apartment complex, located at 2500 Knights Road, Bensalem, Pennsylvania, Parcel Nos. 02-036-295 and 02-024-001.

7

**1.47.**  ~~1.44.~~ **Rejected Contracts:**  Shall have the meaning assigned in section 7.4(b) of this Plan.

**1.48.**  ~~1.45.~~ **Secured Claim:**  Any Claim against the Debtor that is (i) secured by a lien on any interest of the Debtor in property (a) to the extent of the value of such interest as of the Petition Date, (b) as set forth in the Plan; (c) as agreed to by the holder of such Claim and the Debtor; or (d) as determined pursuant to a Final Order in accordance with Section 506(a) of the Bankruptcy Code; or (ii) subject to setoff under Section 553 of the Bankruptcy Code to the extent of such right to setoff.

**1.49.**  ~~1.46.~~ **Security Documents:**  Collectively, the Mortgage and the UCC Financing Statements.

**1.50.**  ~~1.47.~~ **Settlement Property:**  Collectively, (A) the Property; (B) all unexpired leases or tenancies in the Property; (C) all assumed executory contracts and unexpired leases of the Debtor; (D) all fixtures relating to the Property; (E) all equipment located on or relating to the Property; and (F) all rents and accounts receivable arising from the ordinary operation of the Property.  Settlement Property does not include any loans owing to the Debtor from the entities set forth on Exhibit B hereto, refunds of deposits, prepetition claims or causes of action of the Debtor arising from overpayments to vendors or any other cause of action, including but not limited to the Debtor's claims against the BCSWA and pending claims against the Debtor's property insurer).

**1.51.**  ~~1.48.~~ **Taxes:**  All taxes, charges, fees, levies, or other assessments by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, use and occupancy, business privilege, net profits, occupation, intangible and withholding taxes, license, severance, franchise, and other taxes, excluding any interest, penalties

8

or additions attributable to or imposed on or with respect to such taxes, charges, fees, levies or other assessments.

**1.52.** **1.49.** **Transfer Option:**  Shall have the meaning assigned in section 3.2(a)(ii) of this Plan.

**1.53.** **1.50.** **UCC Financing Statements:**  That certain UCC-1 Financing Statement, relating to the Property (and certain related fixtures and personal property) as more particularly described therein and (a) filed with the Office of the Secretary of the Department of State of Florida on July 26, 2005 (file stamp number 20050032847X), which UCC-1 Financing Statement was (i) assigned by Eurohypo to Wells Fargo by the filing of a UCC-3 Financing Statement Amendment on July 24, 2006 (file stamp number 200603241938), (ii) timely continued by Wells Fargo by the filing of a UCC-3 Financing Statement Amendment on February 5, 2010 (file stamp number 201001968067), (iii) assigned by Wells Fargo to Lender by the filing of a UCC-3 Financing Statement Amendment on December 23, 2011 (file stamp number 201105893233) and (iv) timely continued by Lender by the filing of a UCC-3 Financing Statement Amendment on February 5, 2015 (file stamp number 201503069549); and (b) recorded in the Office of the Bucks County Recorder of Deeds on July 25, 2005 in Land Record Book 4545, page 2218, which security interest was assigned to (i) Wells Fargo, by the filing in the Office of the Bucks County Recorder of Deeds of a UCC-3 Financing Statement Amendment on July 27, 2006 in Land Record Book 5042, page 1862, and (ii) the Lender, by the filing in the Office of the Bucks County Recorder of Deeds of a UCC-3 Financing Statement Amendment on December 23, 2011 in Land Record Book 6898, page 1508.

**1.54.** **1.51.** **Unsecured Claim:**  A Claim held by any general unsecured creditor of the Debtor other than Administrative Claims, Priority Claims, or Secured Claims.

9

**1.55.**    ~~1.52.~~ **Wells Fargo:**  Wells Fargo Bank, N.A. as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-LDP4.

**1.56.**    ~~1.53.~~ **Other Terms:**  A term that is used in this Plan and not defined in this Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the same meaning in this Plan as it is given in the Bankruptcy Code or Bankruptcy Rules. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection, paragraph or clause contained in this Plan. The terms "article," "section" and "paragraph" refer to the provisions of this Plan unless the context otherwise clearly indicates. The singular of a defined term shall include the plural and the plural shall include the singular.

## ARTICLE II.  - CLASSIFICATION, DESCRIPTION AND IMPAIRMENT OF CLAIMS AND INTERESTS

**2.1.**    **Class 1 – Priority Claims:**

    (a)    Class 1 shall consist of Allowed Priority Claims.

    (b)    Class 1 Claims are not impaired.

**2.2.**    **Class 2 – Claim of the Lender:**

    (a)    Class 2 shall consist of the Allowed Claim of the Lender.

    (b)    The Class 2 Claim is impaired.

**2.3.**    **Class 3 –Claim of BCWSA:**

    (a)    Class 3 shall consist of the Allowed Claim of BCWSA.

    (b)    The Class 3 Claim is not impaired.

**2.4.**    **Class 4 - General Unsecured Claims:**

118206595_2
118213401_1

(a)    Class 4 shall consist of the Allowed Claims of those creditors holding general Unsecured Claims against the Debtor and not included in any other class of Claims, including any Unsecured Claims held by Affiliates or Insiders of the Debtor.

(b)    Class 4 Claims are not impaired.

**2.5.    Class 5 - Limited Partner Interests:**

(a)    Class 5 shall consist of the Allowed Interests of the Limited Partners of the Debtor.

(b)    Class 5 Interests are not impaired.

**2.6.    Class 6 – General Partner Interest:**

(a)    Class 6 shall consist of the Allowed Interest of the General Partner of the Debtor.

(b)    The Class 6 Interest is not impaired.

## ARTICLE III.  - TREATMENT OF CLAIMS AND INTERESTS

**3.1.    Class 1 – Priority Claims:**

Allowed Priority Claims shall be paid in full, in Cash, on or before the later of: (a) the Effective Date; or (b) ten (10) days after the date of allowance of such Claim by a Final Order if such Claim is a Disputed Claim as of the Effective Date.

**3.2.    Class 2 – Claim of the Lender:**

(a)    <u>Treatment of Lender Claim</u>:

(i)    <u>Payment Option</u>:  On or before 5:00 p.m. Eastern Time on the Payment Date, in consideration and full satisfaction of the Lender Claim and any other Claims that the Lender may have against the Debtor, the Debtor may elect the Payment Option only by paying to the Lender, or its nominee, the sum of $70,500,000.00 (the "Payment Amount"), in Cash, in

11

accordance with section 1.10 of this Plan.  If the Debtor elects the Payment Option, then on the Effective Date:  (a) such documents as are necessary to remove all of its liens against the Collateral (the "Lien Release Documents") shall be delivered to the Debtor; (b) the Debtor shall, without further order of the Court, be authorized to record the Lien Release Documents; and (c) the Lender shall provide and execute such further documents and take such further actions as may be reasonably requested by the Debtor to effectuate the removal of the Lender's liens against the Collateral and any other transaction contemplated by the Plan.  The Lien Release Documents shall be executed by the Lender no later than ten (10) days prior to the Effective Date and shall be held in escrow by the Lender's counsel until the Payment Option is elected.

(ii)    Transfer Option:  If the Payment Option is not exercised by the Debtor at or prior to 5:00 p.m. Eastern Time on the Payment Date, or if the Debtor so elects irrevocably in writing before that time, then, without further order of this Court or action of the Debtor or any other party, the Transfer Option shall automatically be elected.  If the Transfer Option is elected, then all of the Debtor's right, title and interest in the Settlement Property shall automatically be transferred to the Lender or its nominee, free and clear of all claims, liens, charges and other interests of creditors or equity holders to the greatest extent provided by law, except as expressly provided for in this Plan.  Unless otherwise agreed by the Lender in writing, the Transfer Option shall be effected by means of an appropriate form of deed mutually agreeable to the Debtor and the Lender and such other instruments of transfer as shall be necessary to transfer the Settlement Property, including without limitation, an assignment of leases and a bill of sale (collectively, the "Deeds"), each of which shall be executed by the Debtor by the later of: (a) thirty (30) days after the Confirmation Date; or (b) thirty (30) days after the date on which drafts of the Deeds are first provided to the Debtor for review.  The executed Deeds shall be held in escrow by

12

the Debtor's counsel until the Transfer Option is elected.  If the Transfer Option is elected, then: (a) the Deeds shall be delivered to the Lender; (b) the Lender shall, without further order of the Court, be authorized to record the Deeds as it deems necessary or advisable, take possession of the Settlement Property, and take all such further actions as may be consistent with the transfers contemplated by the Plan, including by providing notice to tenants and taking all other actions as may be required under applicable law; and (c) the Debtor shall provide such information and execute such further documents as may be reasonably requested by the Lender, and shall assist the Lender in taking such other actions as may be required under applicable law to effect the transfer of the Settlement Property and any other transaction contemplated by the Plan.  In addition, prior to the Effective Date, the Debtor shall take all actions reasonably requested by the Lender to provide for the transfer of the Settlement Property on the Effective Date in the event the Transfer Option is elected, including, without limitation, by (i) assisting the Lender in preparing or providing notices to tenants, (ii) providing reasonable access to the Property for inspections, (iii) delivering such affidavits and other documents to allow the Lender to obtain a customary owner's title insurance policy, and (iv) providing such information and executing such documents as may be reasonably requested by the Lender.

(b)      Assumption of Payables Under Transfer Option:  If the Settlement Property is transferred to the Lender pursuant to Section 3.2(a)(ii), then the Lender, or its nominee, shall assume on the Effective Date all unpaid post-petition payables arising from the ordinary operation of the Property that have accrued within thirty (30) days of the Effective Date, provided that prior to the Effective Date, the Debtor shall continue to pay all post-petition payables in the ordinary course of business, in a manner, at such time,  and on terms consistent with its treatment of such payables after commencement of the Chapter 11 Case.  Any Administrative Claims asserted by the

13

Lender based upon the Debtor's alleged failure to comply with the terms of this Section shall be filed in accordance with section 7.8 below.

      (c)    <u>Pro-Ration of Property and School Taxes</u>:  If the Settlement Property is transferred to the Lender pursuant to Section 3.2(a)(ii), then property and school taxes related to the Settlement Property shall be pro-rated accordingly and all amounts due as a result of such pro-ration shall be credited or paid in Cash on the Effective Date based on the actual respective number of days of ownership by each of the Debtor and the Lender during the relevant property and school tax years.  Any appropriate post-transfer adjustments shall be accounted for and paid in full within thirty (30) days after the Effective Date.

      (d)    <u>Extinguishment of Lien</u>.  If the Lender Claim is satisfied by the Debtor pursuant to Section 3.2(a)(i), then the liens of the Lender on the Collateral shall be extinguished on the Effective Date.

      (e)    <u>Mutual Comprehensive Releases</u>.  Under either the Payment Option or the Transfer Option described herein, on the Effective Date, the Debtor, the Lender and the Debtor's principal, Israel Feit (and their respective affiliates), shall execute a Mutual Release in the form attached hereto as Exhibit C (the "Mutual Release").  The Mutual Release shall provide that any litigation between the parties pending in the courts of the Commonwealth of Pennsylvania will be marked "settled, discontinued and ended."

      (f)    <u>Adequate Protection Payments</u>.  To the extent not already paid by the Debtor, and notwithstanding the occurrence of the Effective Date, the Debtor shall pay the Lender all adequate protection payments accrued through the Effective Date, including all reasonable and reimbursable fees and expenses pursuant to the Second Interim Agreed Order Approving Use of Cash Collateral Pursuant to 11 U.S.C. § 363 entered by the Court and any subsequent Order

14

through and including the Effective Date.  The reimbursable fees and expenses shall be paid by the Debtor on or before the later of: (i) thirty (30) days after receipt of an invoice from counsel for the Lender requesting reimbursement of such fees; and (ii) ten (10) days after the date the reasonable amount of such fees is determined by the Court if such fees are disputed by the Debtor.  For the avoidance of doubt, notwithstanding the expiration of any cash collateral arrangement or the occurrence of the Effective Date, the Lender will be entitled to be paid, and the Debtor will cause to be paid, all reasonable fees and expenses accrued and unpaid through and including the Effective Date (whether or not invoiced as of such date) to the extent such fees and expenses are reimbursable pursuant to the Second Interim Agreed Order Approving the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 entered by the Court or any subsequent Order.

(g)    Time of the Essence.  Time is of the essence in this Plan, and the time limitations set forth herein will be strictly enforced.

**3.3.    Class 3 – Claim of BCWSA:**

(a)    Treatment of BCWSA Claim:  The Allowed Claim of the BCWSA shall be paid in full, in Cash, on or before the later of: (a) the Effective Date; or (b) ten (10) days after the date of allowance of such Claim by a Final Order if the disputes regarding such Claim have not been resolved as of the Effective Date.  All rights of BCSWA and the Debtor reflected in Exhibit A shall remain unaltered.

(b)    Release of Escrow: Upon payment of the Allowed Claim of the BCWSA in full, the funds held in the BCWSA Escrow Account shall be released to the Debtor or applied to the payment of the Allowed Claim of the BCWSA, at the Debtor's option.

**3.4.    Class 4 – General Unsecured Claims:**

118206595_2
118213401_1

Allowed General Unsecured Claims shall be paid in full, in Cash, on or before the later of: (a) the Effective Date; or (b) ten (10) days after the date of allowance of such Claim by a Final Order if such Claim is a Disputed Claim as of the Effective Date.

**3.5.   Class 5 - Limited Partner Interests:**

The Interests of the limited partners shall be retained to the same extent as the Interests of the limited partners as of the Petition Date.

**3.6.   Class 6 - General Partner Interest:**

The Interests of the general partner shall be retained to the same extent as the Interests of the general partner as of the Petition Date.

**3.7.   Administrative Claims:**

All holders of Allowed Administrative Claims shall be paid the full amount of their Allowed Claims, in Cash, on or before the later of: (a) the Effective Date; or (b) ten (10) days after the date of allowance of such Claim by a Final Order.

## ARTICLE IV.  - ACCEPTANCE OR REJECTION OF THE PLAN

**4.1.   Impaired Classes of Claims and Interests Entitled to Vote:**   Claim and/or Interest holders in each Class identified as impaired in Article II of the Plan are entitled to vote as a class to accept or reject the Plan.

**4.2.   Acceptance by an Impaired Class:**  In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, a class of Claims entitled to vote to accept or reject the Plan shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such class that have timely and properly voted to accept or reject the Plan.

16

**4.3.    Presumed Acceptances by Unimpaired Classes:**  Claim and/or Interest holders in each class identified as not impaired in Article II of the Plan are conclusively presumed, under Section 1126(f) of the Bankruptcy Code, to accept the Plan and the votes of such Claim holders will not be solicited.

## ARTICLE V.  - PRESERVATION OF RIGHTS

**5.1.    Preservation of Rights by the Debtor:**  Except for claims released pursuant to Section 3.2(e), the Debtor specifically preserves any preference claims, fraudulent conveyance claims or other claims which it may have against any creditor or other party under the Bankruptcy Code or other applicable law (other than the Lender), including but not limited to claims or causes of action against the BCSWA and pending claims against the Debtor's property insurer. Confirmation and effectiveness of this Plan shall not be deemed to release any such claims, except as to the Lender, against which all potential claims shall be extinguished upon execution of the Mutual Release.

## ARTICLE VI.  - IMPLEMENTATION OF THE PLAN

**6.1.    Plan Funding:**  Payments to Class 1, 3 and 4 of the Plan shall be funded through Cash held by the Debtor and/or repayment to the Debtor of certain Affiliate loans owed to the Debtor.  If the Debtor elects the Payment Option for treatment of the Lender Claim, the payment to the Lender shall be funded through a combination of refinancing, Cash held by the Debtor and/or repayment to the Debtor of certain Affiliate loans owed to the Debtor.  If the Debtor elects the Payment Option under Section 3.2(a)(i), the Debtor is hereby authorized, on or before the date on which the Effective Date occurs, to obtain credit and borrow money, under the terms of the Exit Financing Facility, in a refinancing transaction for the purpose of making the required payment. The Debtor is also authorized to complete the transactions contemplated by the Exit Financing

17

Facility, and the Debtor shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Financing Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization or approval of any person. Any such extension of credit or borrowing, and any liens or mortgages granted with respect thereto, shall be entitled to the protections provided for in Section 364(e) of the Bankruptcy Code.

**6.2.    Reserve for Professional Fees and Lender's Reimbursable Fees and Expenses:** On or before the Effective Date, the Debtor shall place in a reserve account Cash sufficient to make payments on account of Professional Fee Claims (as defined below) and the reimbursable fees and expenses of the Lender.

**6.3.    Disputed Claims:**  Notwithstanding anything in the Plan to the contrary, in the event that any Claim shall remain a Disputed Claim as of the Effective Date, the amount of the distribution for such Claim under this Plan shall not be made with respect to such Claim until such Claim becomes an Allowed Claim by virtue of a Final Order.

**6.4.    Payments after Allowance:**  Payments to each holder of a Disputed Claim, to the extent such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the Allowed Claim belongs.  No interest shall be paid on account of a Disputed Claim which later becomes an Allowed Claim.

**6.5.    Objection Deadline:**  As soon as practicable, but in no event later than the Effective Date (subject to being extended by the Bankruptcy Court upon motion of the Reorganized Debtor), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each Claim to which objections are made.

118206595_2
118213401_1

**6.6.    Effectuating Documents and Further Transactions:**  Each of the officers and/or directors of the general partner of the Debtor and/or the Reorganized Debtor is authorized, in accordance with his or her authority under any resolution of the board of directors of the general partner to execute, deliver, file or record such contracts, instruments, releases, indentures and/or other agreements or documents and to take such action as may be necessary and appropriate to effectuate the terms and provisions of the Plan (including the Exit Financing Facility).

**6.7.    Conditions Precedent to the Occurrence of the Effective Date:**  The following are conditions precedent to the occurrence of the Effective Date:

(a)    Conditions Precedent to the Occurrence of the Effective Date Under Both the Payment Option and the Transfer Option:

(i)    (a)  The Confirmation Order shall have been entered by the Bankruptcy Court and be in full force and effect and not be subject to any stay or injunction.

(ii)    (b)  Either (i) the Payment Option shall have been elected in accordance with section 3.2(a)(i) of this Plan, or (ii) the Transfer Option shall have been elected, the Deeds shall have been delivered, and the transfer of the Settlement Property shall have been effected in accordance with section 3.2(a)(ii) of this Plan.

(b)    Additional Condition Precedent to the Occurrence of the Effective Date Under the Payment Option Only:  Only if the Debtor elects the Payment Option under Section 3.2(a)(i), the Exit Financing Facility Agreement shall have been executed and delivered by all of the entities that are parties thereto, and all conditions precedent to the consummation thereof (as provided in the Exit Financing Facility Agreement) shall have been waived by the Exit Financing Facility Lender under the Exit Financing Facility, or satisfied in accordance with the terms thereof, and funding pursuant to the Exit Financing Facility shall have occurred.  Nothing herein shall

19

118206595_2
118213401_1

prevent the Effective Date under the Transfer Option from occurring in the event the Debtor does not elect the Payment Option.

**6.8.    Conditions Precedent to Confirmation:**  The following are conditions precedent to confirmation of the Plan:

(a)    The Bankruptcy Court shall have entered an order or orders, which may be the Confirmation Order, confirming the Plan, authorizing the Debtor to execute, enter into and deliver any documents relating thereto and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan.

(b)    The Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor, the Exit Financing Facility Lender and the Lender.

**6.9.    Corporate Action:**  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including, should the Debtor elect the Payment Option under Section 3.2(a)(i), the execution of and entry into the Exit Financing Facility.

## ARTICLE VII.  - EFFECT OF CONFIRMATION

**7.1.    Terms Binding:**  On the Effective Date, all provisions of this Plan, including all Exhibits attached hereto, shall be binding upon the Debtor, all Claimants and Interest holders of the Debtor, and all other entities who are affected in any manner by the Plan.

**7.2.    Discharge:**  Except as otherwise provided in this Plan, an order confirming this Plan shall constitute a discharge, as of and only upon occurrence of the Effective Date, of any and all debts of the Debtor that arose at any time prior to the entry of the Confirmation Order, pursuant to Section 1141 (d)(1)(A) of the Bankruptcy Code.  Such discharge does not impair obligations explicitly created under this Plan.

118206595_2
118213401_1

7.3.    **Revesting:**  On the Effective Date, the Reorganized Debtor shall be vested with all interests and property, including causes of action but excluding any property that is transferred pursuant to the provisions of this Plan, of the Debtor's estate free and clear of all claims, liens, charges and other interests of creditors or equity holders arising prior to the Petition Date, except as expressly provided for in this Plan.

7.4.    **Assumption or Rejection of Executory Contracts and Unexpired Leases:**

(a)    Payment Option Under Section 3.2(a)(i): If the Payment Option is elected in accordance with Section 3.2(a)(i) of this Plan, then pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed assumed by the Debtor, with such assumption effective as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date; or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date.

(b)    Transfer Option Under Section 3.2(a)(ii): If the Transfer Option is elected under Section 3.2(a)(ii) of this Plan, then pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the provisions of section 7.4(a) shall apply, except that all executory contracts and unexpired leases of the Debtor with Israel Feit, any entity Israel Feit controls, any Affiliate of Israel Feit, or any person related to Israel Feit shall be deemed rejected by the Debtor, with such rejection  effective as of the Effective Date (the "Rejected Contracts").  For the avoidance of doubt, the Debtor, and not the Lender, shall be obligated for the payment of all Allowed Claims arising under the Rejected Contracts, including any amounts accrued during the period between the Confirmation Date and the Effective Date.  Pursuant to Sections 365(a) and 1123(b)(2) of the

21

Bankruptcy Code, all assumed executory contracts and unexpired leases of the Debtor shall be assigned to the Lender on the Effective Date.

**7.5.    Payment of any Cure Amounts for Assumption of Contracts:**  The Debtor shall pay any cure amounts owed to the non-debtor parties of executory contracts or unexpired leases that are assumed by the Debtor pursuant to this Plan on the Effective Date, whether or not assigned to the Lender or its nominee, other than unpaid amounts accrued within thirty (30) days of the Effective Date that are payable by the Lender pursuant to Section 3.2(b).

**7.6.    Filing of Claims by Parties to Contracts and Leases:**  Notwithstanding any date set by the Bankruptcy Court as a bar date, each entity that is a party to an executory contract or unexpired lease rejected pursuant to this Plan (and only such entities) shall be entitled to file with the Clerk of the Bankruptcy Court, no later than thirty (30) days after the Effective Date, a proof of claim for damages alleged to have been suffered due to such rejection. Failure to file such a proof of claim in a timely fashion shall result in its disallowance unless the Bankruptcy Court orders otherwise.  Distribution pursuant to either Article VII hereof shall be made within sixty (60) days after the deadline for filing such Claims unless an appropriate objection shall have been filed within such period.

**7.7.    Claims Settlement:**  Notwithstanding any requirement that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Claims may be compromised and settled by the Reorganized Debtor according to the following:

(a)    Settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party-in-interest if:

(i)    the settlement or compromise of the Claim pursuant to which such Claim is Allowed is in an amount of $25,000 or less; and

118206595_2
118213401_1

(ii)    the settlement or compromise of the Claim where the difference between the amount of the Claim listed on the Debtor's schedules and the amount of the Claim proposed to be Allowed under the settlement is $25,000 or less.

(b)    Settlements or compromises that involve an Insider shall be submitted to the Bankruptcy Court for approval.

**7.8.    Bar Date for Administrative Claims:**  Any Claimant asserting an Administrative Claim against the Debtor or the Debtor's bankruptcy estate, other than (i) any professionals asserting Administrative Claims pursuant to Section 330 of the Bankruptcy Code (the "Professional Fee Claims") or (ii) the Lender asserting an Administrative Claim based on the Debtor's failure to comply with its obligations under Section 3.2(b) or any other Administrative Claim of the Lender arising on or before the Effective Date (a "Lender Administrative Claim"), shall file a request for the allowance of such Claim no later than sixty (60) days after the Confirmation Date (the "Administrative Claims Bar Date") or such Claim shall be forever barred and the Debtor shall have no obligation to make distribution on any such Claim pursuant to this Plan.  Any Lender Administrative Claim must be filed with the Court no later than thirty (30) days after the Effective Date or such Claim shall be forever barred and the Debtor shall have no obligation to make distribution on any such Claim pursuant to this Plan.

**7.9.    Objections to Administrative Expense Claims:**  Unless otherwise ordered by the Bankruptcy Court, all objections to Administrative Expense Claims, other than Professional Fee Claims (as defined below) that are the subject of requests for payment filed with the Bankruptcy Court shall be filed and served upon the holder of the Administrative Expense Claim as to which the objection is made no later than sixty (60) days after the Administrative Claim Bar Date.

23

7.10.    **Deadline for Professional Fee Claims:**  Any professional asserting a Professional Fee Claim shall file its final application for allowance of such Professional Fee Claim no later than sixty (60) days after the Effective Date.  Any Professional Fee Claim that is Allowed by the Court after the Effective Date shall be paid by the Debtor as soon as practicable after allowance of such Claim by the Court.

7.11.    **Exemption from Transfer Taxes:**  Any transfer pursuant to this Plan or the Confirmation Order, including pursuant to the Exit Financing Facility under Section 3.2(a)(i), including the transfer to the Lender pursuant to the Transfer Option under Section 3.2(a)(ii) and any sale, transfer or contribution of property or the provision of any security or mortgage in connection with such a sale or plan funding is critical to the Plan's consummation and effectiveness and shall constitute a "transfer under a plan" within the purview of Section 1146(c) of the Bankruptcy Code and shall not be subject to ~~transfer, stamp or similar taxes~~any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes or other similar taxes, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment in accordance with such section.  The transfer of any property of the Estate, or the recording of any deed, lease, mortgage, or other instrument executed and delivered in connection herewith, from time to time shall be free and clear of any and all stamp or similar taxes or recording fees imposed upon the making or delivery of an instrument of transfer pursuant to Section 1146(c) of the Bankruptcy Code.

118206595_2
118213401_1

**7.12.    Recordation of Plan and Confirmation Order:**    A true, certified copy of the Plan, the Confirmation Order, and any exhibit to the Confirmation Order may be recorded in any public place appropriate for such recordation, including to evidence the free and clear transfer of the Settlement Property pursuant to section 3.2(a)(ii).    Pursuant to Section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.    In order to effectuate Section 1146(c) of the Bankruptcy Code, each recorder of deeds or similar official for any county, city or governmental unit in which deeds for transfer of any property of the Estate (including pursuant to section 3.2(a)(ii)) is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such deeds for recording and promptly to record such deeds.    The Confirmation Order shall provide that the filing of any objection thereto shall not stay the effect of the Confirmation Order and shall not exempt or excuse any recorder of deeds or similar official from promptly accepting and recording any such deeds.

**7.13.    Terms of Existing Injunctions or Stays:**    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date or the date indicated in the order providing for such injunction or stay.

**7.14.    Injunctions:**    Except as provided for in the Plan or the Confirmation Order, as of the Effective Date, all Claimants that have held, currently hold, or may hold a Claim or other debt or liability that is discharged, are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or its property on account of any of its discharged claims, debts or liabilities: (i) commencing or continuing, in any manner or in any place, any

25

action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any

judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance;

(iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or

obligation due to the Debtor or the Reorganized Debtor, except as provided for in the Plan; and (v)

commencing or continuing any action, in any manner, or in any place, that does not comply with or

is inconsistent with the provisions of the Plan.  By accepting any payment pursuant to the Plan,

each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions

set forth in this Article.

      **7.15.**    Neither the Debtor, its estate, the Reorganized Debtor, the Lender, nor any of their

respective officers, directors, employees, advisors, professionals, agents or members shall have or

incur any liability to, or be subject to any right of action by, the Debtor, any holder of a Claim or

Interest or any other party-in-interest for any act or omission in connection with, related to, or be

subject to any right of action, by the Debtor arising out of, the Chapter 11 Case, negotiations

regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the

Plan or the administration of the Plan or the property to be distributed under the Plan, any act taken

or omitted to be taken after the Petition Date, except for willful misconduct or gross negligence,

and, in all respects, the Debtor, its estate, the Reorganized Debtor, and their respective officers,

directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of

counsel with respect to their duties and responsibilities under the Plan.

      **7.16.    Execution of Documents Extinguishing Liens:**  Subject to section 3.2(d) hereof,

the Reorganized Debtor shall have the authority and power to execute documents extinguishing

liens on behalf of those creditors whose liens have been and will be extinguished pursuant to this

Plan.

118206595_2
118213401_1

**7.17.  Preservation of Rights by the Debtor and Parties-in-Interest:**  Except for Claims released pursuant to Section 3.2(e), the Debtor specifically preserves any claims which it may have against any creditor or other party under the Bankruptcy Code or other applicable law. Confirmation and effectiveness of this Plan shall not be deemed to release any such claims.  In the event that the Plan does not become effective, all settlements, releases and proposed treatments in the Plan are void *ab initio* and all parties reserve their rights to pursue or defend any matter as if the Plan has never been confirmed.

## ARTICLE VIII.  - MISCELLANEOUS PROVISIONS

**8.1.   Retention of Jurisdiction by the Bankruptcy Court after Effective Date:** Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Case or the Plan; or (c) that relates to any of the following:

(a)     To hear and determine any and all motions or applications pending on the Confirmation Date for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination of any executory contract or unexpired lease;

(b)     To determine any and all adversary proceedings, related party actions, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that may be instituted after the Effective Date, including, without express or implied limitation, any avoidance actions or estate causes of action;

(c)     To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied

27

limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any contested Claim in whole or in part;

(d)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code;

(e)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f)     To hear and determine all applications for allowances of compensation and reimbursement of expenses of professional persons under Sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(g)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan, including the Exhibits to the Plan, or the Plan Documents or their interpretation, implementation, enforcement, or consummation;

(h)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all Exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(i)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan or its interpretation, implementation, enforcement, or consummation;

(j)     To consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtor's estate, to the extent that Bankruptcy Court approval is required;

28

118206595_2
118213401_1

(k)    To determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(l)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(m)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor;

(n)    To hear and determine all causes of action and all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with causes of action;

(o)    To enter an order or final decree closing the Chapter 11 Case of the Debtor;

(p)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(q)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(r)    To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code.

**8.2.    Modifications to the Plan.**  The Debtor may not modify the Plan except with consent of the Lender, which shall not be unreasonably withheld.  If, with the consent of the Lender, the Debtor files such modification with the Bankruptcy Court, the Plan as modified shall become the Plan, provided, that nothing herein shall limit the Debtor's obligations with respect to sections 1122, 1123 and 1129 of the Bankruptcy Code.

118206595_2
118213401_1

**8.3.    Payments under the Plan:** Whenever any payment required to be made under the Plan shall be due on a day other than a business day, such payment shall be made instead, without interest, on the immediately succeeding business day, but shall be deemed to have been made on the date due.  Except as otherwise provided for in the Plan, any payment shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to the extent the payment exceeds the principal amount of the Claim, to the portion of the Claim representing the accrued but unpaid interest. Except for the payment to the Lender under the Payment Option pursuant to Section 3.2(a)(i), any payment to be made pursuant to the Plan shall be deemed paid when a check is deposited in the U.S. mail. Notwithstanding anything to the contrary contained herein, no payment of fractions of cents shall be made.  Fractional cents shall be rounded down to the nearest whole cent.

**8.4.    Address for Payments under the Plan:** Subject to Bankruptcy Rule 9010, any payment to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the proof of claim filed by such holder (or the last known address of such holder if no proof of claim is filed). If any payment is returned to the Reorganized Debtor as undeliverable, no further payments shall be made unless and until the Reorganized Debtor is notified of the holder's current address within three (3) months after the payment was returned, at which time any missed payments shall be made to the holder without interest.

**8.5.    Time Bar to Payments:** Checks issued for payments in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor. All Claims in relation to void checks as provided herein shall be barred forever and such unpaid payments shall revert to the Reorganized Debtor.

118206595_2
118213401_1

**8.6.    Manner of Payment Under the Plan:**  Unless a Claimant agrees otherwise, any payment to be made under the Plan (other than pursuant to section 3.2(a) hereof) shall be made in Cash, pursuant to section 1.8 of this Plan.

**8.7.    Payment of Statutory Fees:**  All statutory fees accrued through and including the Effective Date shall be paid by the Debtor on or before the Effective Date and, after the Effective Date, the Reorganized Debtor shall pay all required statutory fees in the ordinary course of business.

**8.8.    No Interest or Attorneys' Fees:**  Except as expressly stated in the Plan, or as allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date, and no award or reimbursement of attorneys' fees or related expenses or disbursements, shall be allowed on, or in connection with, any Claim.

**8.9.    Remedy of Technical Defects:**  After the Effective Date, the Debtor may, with the consent of the Lender, not to be unreasonably withheld, and with the approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interests of any Claimant, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order confirming the Plan, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**8.10.    Notice of Default by non-Lender Creditors Under the Plan:**  No default shall be declared under the Plan unless any payment due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made sixty (60) days after written notice of the default to the Debtor, provided, however, that this provision shall not apply to the terms of section 3.2 of this Plan.

31

118206595_2
118213401_1

**8.11.    Surrender and Cancellation of Instruments:**  On the Effective Date, except as otherwise provided in the Plan, all promissory notes, instruments, securities and agreements evidencing a Claim shall be canceled. Except with respect to section 3.2 of the Plan, to which this section 8.11 does not apply, at the option of the Debtor, no payment under this Plan shall be made to or on behalf of any holder of any Claim, unless and until such promissory note, instrument, security or agreement is surrendered or the unavailability thereof is reasonably established to the satisfaction of the Debtor and such holder of a Claim executes and delivers any documents necessary to release all encumbrances arising under any applicable security agreement or nonbankruptcy law and such other documents as the Debtor may reasonably request. In accordance with Section 1143 of the Bankruptcy Code, any such holder of a Claim that fails to surrender or cause to be surrendered such promissory note, instrument, security or agreement or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Debtor, and, in the event that the Debtor requests, furnishes a bond in form and substance reasonably satisfactory to the Debtor (including, without limitation, amount), shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any payment hereunder (to the extent otherwise entitled).

**8.12.    Service of Documents:**  Any notice, request or demand required or permitted to be made or provided to or upon a Debtor or Reorganized Debtor under the Plan shall be: (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed; and (iv) addressed as follows:

**The Debtor**

118206595_2
118213401_1

Creekside Associates, Ltd.
Attn: Israel Feit
c/o Feit Management, Inc.
2450 Hollywood Boulevard, Suite 602
Hollywood, FL   33020

with a copy to:

Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA  19102
Attn:  Jennifer L. Maleski, Esquire
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
E-Mail: jmaleski@dilworthlaw.com

**8.13.    Inconsistencies:**  In the event that there is any inconsistency between the Exhibits to the Plan or any instrument given pursuant to the Plan, on the one hand, and Articles 1 through 8 of the Plan, on the other hand, the provisions of Articles 1 through 8 hereof shall govern.

**8.14.    Governing Law:**  To the extent that the law of any state governs the interpretation or application of any provision of this Plan, the governing law shall be that of the Commonwealth of Pennsylvania.

**8.15.    Headings:**  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**8.16.    Binding Effects:**  The Plan shall be binding and inure to the benefit of the Debtor, the holders of all Claims and Interests, and their respective successors and assigns.  To the extent any provision of the Disclosure Statement may be inconsistent with the terms of the Plan, the Plan shall be binding and conclusive.

**8.17.    Severability: SHOULD  THE  COURT  DETERMINE  THAT  ANY PROVISION  OF  THE  PLAN,  OTHER  THAN  SECTION  3.2,  IS  UNENFORCEABLE**

118206595_2
118213401_1

**EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT: (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN; OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.  THIS SEVERABILITY PROVISION SHALL HAVE NO FORCE OR EFFECT IN THE EVENT THAT THE COURT DETERMINES THAT SECTION 3.2 HEREOF IS NOT FULLY ENFORCEABLE IN ACCORDANCE WITH ITS TERMS.**

     **8.18.**    **Content of Notice of Default:**  Any notice of default given under this Plan, or under any Exhibit or instrument delivered pursuant to this Plan shall:  (i) conspicuously state that it is a notice of default; (ii) describe with particularity the nature of the default including a reference to the specific provisions of the Plan, Exhibit or instrument as to which a default has occurred; and (iii) describe any action required to cure the default including the exact amount of any payment required to cure such default.

118206595_2
118213401_1

**LIST OF EXHIBITS**

A. BCSWA Escrow Agreement
B. List of Loans Payable to Debtor Excluded from Settlement Property
C. Mutual Release

**[EXHIBIT A – BCSWA ESCROW AGREEMENT]**

**[EXHIBIT B – LOANS OWING TO DEBTOR EXCLUDED FROM SETTLEMENT
PROPERTY]**

Kerridge Equities Corp.
Lake Henry Groves 70, LLC
Lake Placid Groves 93, LLC
Avon Park 38, LLC
Avon Park Holdings, LLC

**[EXHIBIT C – MUTUAL RELEASE]**

Document comparison by Workshare Compare on Thursday, June 11, 2015 2:05:37 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://PHDMS/PHL/118213401/1 |
| Description | #118213401v1<PHL> - Creekside - First Amended Plan (FOR FILING) |
| Document 2 ID | interwovenSite://PHDMS/PHL/118219382/1 |
| Description | #118219382v1<PHL> - Creekside - Second Amended Plan (FOR FILING) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 26 |
| Deletions | 41 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 67 |