UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** <br> **CREEKSIDE ASSOCIATES, LTD.,** <br> Debtor. | Chapter 11 <br> Case No. 14-19952 (SR) |
| **CREEKSIDE ASSOCIATES, LTD.** <br> Plaintiff, <br> v. <br> **BUCKS COUNTY WATER AND SEWER AUTHORITY** <br> Defendant. | ADVERSARY NO. 15-107 (SR) |

## SETTLEMENT AGREEMENT

Plaintiff/Debtor Creekside Associates, LTD. (the "Debtor" or "Creekside") and Defendant Bucks County Water and Sewer Authority (the "BCWSA") (Creekside and BCWSA are referred to collectively as the "Parties") hereby enter into this Settlement Agreement (the "Settlement Agreement") to resolve the above-captioned adversary proceeding and related disputes between them upon the following terms and conditions:

### BACKGROUND

A.   The Debtor owns and operates the Creekside Apartments – a 1,000 plus unit apartment complex consisting of Parcels 02-024-001 and 02-036-295 located on or about 2500 Knights Road, Bensalem, Pennsylvania (the "Property"), which it purchased from Doral Garden Associates ("DGA") and Bensalem Garden Associates ("BGA") in or around December 2000;

B.   In connection with their development of an apartment complex and other improvements on the Property in the 1970's, BGA, DGA and/or their affiliates constructed in phases

a sewer system consisting of the so-called "Chamber 8 System," the so-called "Chamber 16 System" and accompanying components for the removal of wastewater and discharge into a collection system for transfer to a wastewater treatment plant. The Chamber 8 System consists of approximately 2,830 linear feet of Main line ACP (Asbestos Cement Pipe) ranging in diameter from 8 to 12 inches, 15 gravity manholes and various tributary laterals and cleanouts leading to the connected buildings. The Chamber 16 System consists of approximately 2,260 linear feet of Main line ACP ranging in diameter from 8 to 12 inches, 14 gravity manholes and various tributary laterals and cleanouts leading to the connected buildings. The Chamber 8 System and the Chamber 16 System along with all associated pipe, manholes, cleanouts and other components are referred to collectively in this Settlement Agreement as the "SEWER SYSTEM" (the definition of SEWER SYSTEM for the purposes of this Settlement Agreement does not include any laterals);

C.    In the 1970's, the Bensalem Township Authority ("BTA"), a municipal authority, provided water and/or sewer services to various properties located in or around Bucks County, Pennsylvania, including the Property;

D.    On or about June 18, 1971, BGA as the "Special Customer" and BTA as the "Authority"– entered into an "Agreement to Supply Water and Sewer Service to An Apartment Project";

E.    BTA entered into Memorandums of Agreement to Supply Sewer or Water Service with both BGA and DGA, both of which were recorded in the office of the Bucks County Recorder of Deeds, at Book 2002, page 243-247 and Book 2004, page 324-328, respectively;

F.    With the consent of the BTA, BGA and DGA connected the SEWER SYSTEM to facilities owned or operated by the BTA and/or to an interceptor owned by the City of Philadelphia

2

to which the BTA had the sole right to connect;

G. The BCWSA is an independent, non-profit agency organized by the Board of Commissioners of the County of Bucks, Pennsylvania, with its principal place of business at 1275 Almshouse Road, Warrington, PA 18976;

H. In 1999, the BCWSA entered into an Asset Purchase Agreement with the Township of Bensalem ("Township") to acquire certain assets from the Township relating to its sanitary sewer system. Some of the sewer systems owned by the Township were previously owned and operated by BTA;

I. From the early 1970's until sometime in or around 2007, BTA, the Township and thereafter the BCWSA billed the Debtor for sewage usage based on the Property's actual water usage;

J. By notice dated November 29, 2006, BCWSA advised the Debtor that, effective January 1, 2007, it would bill for sewer service not based on the Property's actual water usage, but based on the readings of various flow meters (the "Meters") installed in the SEWER SYSTEM;

K. From January 1, 2007 forward, the Debtor has challenged the sewer bills and remitted payment for sewage usage based upon the Property's water usage, rather than the higher bills based on the Meters;

L. As a result of the billing dispute, the BCWSA placed liens on the Property (the "Sewer Liens"), including the following:

> (1). On or about November 17, 2011, the BCWSA placed a $1,849,393.97 lien on the Property (Case No. 2011-74011) for the period February 26, 2007 through October 20, 2011;

3

(2). On or about February 23, 2012, the BCWSA placed a $1,502,251.36 lien on the Property (Case No. 2012-70645) for the period February 2, 2009 through January 27, 2012; and,

(3). On or about November 8, 2012, the BCWSA placed a $910,394.33 lien on the Property (Case No. 2012-74008) for the period January 27, 2012 through August 24, 2012;

M.  As part of a pre-petition agreement to remove the Sewer Liens on the Property while the Parties attempted to resolve the dispute, the Debtor deposited $825,000.00 into interest bearing escrow accounts currently maintained in the names of counsel for the respective Parties (the "Escrow Funds");

N.  The Parties have a number of disputes related to the SEWER SYSTEM and the billing by the BCWSA for sewer-related services, including the following: (1) whether the SEWER SYSTEM has been dedicated to the BCWSA; (2) which party, as between the Debtor and the BCWSA, has the obligation to repair and maintain the SEWER SYSTEM; (3) the method by which the BCWSA's sewer charges should be determined (e.g., based on flow readings from the Meters or based on the Property's water usage); and, (4) the rates charged to the Debtor and the amounts due and owing by the Debtor for sewer services;

O.  On or about October 14, 2008, Creekside filed suit against the BCWSA in the Court of Common Pleas, Buck County, Pennsylvania, in the matter of *Creekside Associates, Ltd. v. Bucks County Water and Sewer Authority,* Civil Action 0810389-30-1 (the "Bucks County Litigation");

P.  On December 19, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Bankruptcy Case") with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections

4

1107(a) and 1108 of the Bankruptcy Code. The Debtor has filed a disclosure statement which has been approved by the Bankruptcy Court in the Bankruptcy Case, along with a Plan of Reorganization filed on May 15, 2015 (as amended, the "Plan"), which is awaiting a confirmation hearing;

Q. On or about March 20, 2015, the Debtor commenced an adversary action in the Bankruptcy Case against the BCWSA in the matter of *Creekside Associates, Ltd. v. Bucks County Water and Sewer Authority,* U.S.B.C. E.D. PA, Adversary No. 15-00107 (SR) (the "Creekside Adversary Litigation"). In the Creekside Adversary Litigation, the Debtor asserts claims against the BCWSA for, inter alia, declaratory relief and damages (the "Creekside Claims"), and the BCWSA disputes and denies any such liability. In addition, BCWSA filed a counterclaim against the Debtor in the Creekside Adversary Litigation for unpaid sewer services rendered;

R. On or about March 30, 2015, the BCWSA filed a proof of claim in the Bankruptcy Case in the amount of $3,892,570.30, identified on the docket as Claim No. 12 (the "BCWSA Proof of Claim");

S. The Debtor disputes the BCWSA Proof of Claim; and,

T. At a settlement conference on May 13, 2015 before the Honorable Stephen Raslavich of the United States Bankruptcy Court for the Eastern District of Pennsylvania, the Parties reached a tentative settlement of the Creekside Adversary Litigation, the BCWSA Proof of Claim and all related disputes between them, which settlement was revised and placed on the record at a hearing on June 8, 2015, and is further memorialized in this Settlement Agreement.

NOW THEREFORE, the Parties, intending to be legally bound, hereby covenant and agree as follows:

1. **Settlement Subject to Bankruptcy Court Approval.**

1.1    This Settlement Agreement shall be subject to and conditioned upon: (1) the approval of the Settlement Agreement by the Bankruptcy Court in the Debtor's Bankruptcy Case; and (2) the payment in full of the BCWSA Allowed Claim in accordance with the terms of this Settlement Agreement. The Parties shall cooperate with each other and use their best efforts to seek and obtain court approval of the Settlement Agreement as promptly as possible.

1.2    A motion to approve this Settlement Agreement shall promptly be filed by the Debtor in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Settlement Agreement shall be effective upon the entry of an order in the Bankruptcy Case approving the Settlement Agreement (the "Approval Order") without any changes not acceptable to the Parties. The Approval Order shall be deemed "final" on the expiration of fourteen (14) days following the entry of the Approval Order unless an appeal from such Approval Order has been taken, in which event the Approval Order shall be deemed "final" if and when (a) the appeal has been adjudicated in a manner which leaves the Approval Order intact, or (b) the appeal has been dismissed. In the event of an appeal of the Approval Order, the Debtor shall use its best efforts to seek a dismissal of the appeal or an affirmance of the Approval Order. In the event that a final Approval Order is not obtained, or in the event that the BCWSA Allowed Claim is not paid in full in accordance with the terms of this Settlement Agreement, then this Settlement Agreement shall be null, void and without force or effect, and the Parties shall be restored to their claims, defenses and positions as though no settlement had been achieved between them.

2. **BCWSA's Claim in the Bankruptcy Proceeding.**

Conditioned and effective upon the occurrence of the Sewer Dedication Date, but subject to

6

paragraph 9 below, BCWSA shall have an allowed unsecured claim in the Bankruptcy Case in the amount of the Escrow Funds in the escrow accounts, including accrued interest, if any, maintained by counsel for the Debtor and the BCWSA (the "BCWSA Allowed Claim").

3.  **Dedication of the SEWER SYSTEM**.

Upon payment in full of the BCWSA Allowed Claim and the delivery of a deed for the SEWER SYSTEM assets free and clear of any liens, claims or encumbrances (with the exception of the certain mortgage lien granted by Doral Garden Associates on or about May 6, 1971 in the amount of $8,337,000 recorded in Mortgage Book 1790, Page 389 (the "DGA Mortgage"), which is shown in a recent title report obtained by BCWSA from Commonwealth Land Title Insurance Company and which the parties believe to have been satisfied) or a subordination agreement reasonably acceptable to the BCWSA with respect to liens, claims and encumbrances other than the DGA Mortgage (the "Sewer Dedication Date"), the BCWSA shall be deemed to have accepted dedication of the SEWER SYSTEM. From the Sewer Dedication Date forward, the BCWSA shall have sole and exclusive obligation and responsibility to repair, maintain and/or replace the SEWER SYSTEM, and the Debtor and all subsequent owners of the Property shall have no obligation whatsoever to repair, maintain and/or replace the SEWER SYSTEM. The Parties shall execute such further documentation and take such further action as may be reasonably necessary to record with the Bucks County Recorder of Deeds the dedication of the SEWER SYSTEM to the BCWSA, and the Parties' continuing rights and obligations in connection with the SEWER SYSTEM and the provision of sewer services in accordance with this Settlement Agreement. The parties shall use best efforts to accomplish the Sewer Dedication Date as promptly as possible after the Approval Order becomes final.

4.  **Repair of the SEWER SYSTEM.**

The BCWSA shall provide reasonable notice to the Debtor in advance of making repairs to the SEWER SYSTEM and the BCWSA shall use commercially reasonable efforts to minimize disrupting or interfering with the use and enjoyment of the Property by the Debtor and its tenants. The Debtor shall reasonably cooperate with the BCWSA's efforts to repair, maintain and/or replace the SEWER SYSTEM. The BCWSA shall also make any repairs necessary to the Debtor's laterals which connect to the SEWER SYSTEM to place them in reasonable commercial condition. Thereafter, the repair and maintenance of such laterals shall be the sole responsibility of the Debtor, unless otherwise provided in a written agreement signed by all Parties, which such written maintenance/repair agreement shall be offered to the Debtor through participation in the BCWSA Lateral Program in accordance with its standard terms for commercial customers. The current charge is $10.00 per month, per lateral, which is subject to change in accordance with BCWSA's standard pricing plan for such services for commercial customers.

5.  **Future Billing for Sewer Usage.**

Commencing on May 1, 2015 and continuing at all times thereafter, provided that this Settlement Agreement is not nullified under paragraph 12 below, the BCWSA shall charge the Property for sewer usage based on the Property's actual water usage as billed by the provider of water to the Property (currently Aqua Pennsylvania, Inc.) at the same "Commercial" rate as it charges other commercial customers, which is described in the BCWSA Amended and Restated Consolidated 2015 Rate and Fee Resolution. The BCWSA represents and warrants that its current "Commercial" rate is $7.11 per thousand gallons of usage, which rate is subject to periodic changes. In addition to the future billing for sewage usage commencing on May 1, 2015, Creekside agrees to

8

pay to BCWSA any outstanding amounts due for sewage usage for the period January 1, 2015 through April 30, 2015, based on metered water inflows at the commercial rate of $7.11 per thousand gallons.

6.  **Discontinuance of Sewer Flow Meters for Billing Purposes.**

Commencing on May 1, 2015 and continuing at all times thereafter, provided that this Settlement Agreement is not nullified under paragraph 12 below, the BCWSA shall discontinue use of the sewage flow Meters on the Property for billing purposes.

7.  **BCWSA Certification**.

The BCWSA hereby represents and warrants that, after it began using the Meters to measure sewage discharge from the Property, the payments made by it to the City of Philadelphia on account of the Property's sewage discharge into the City's systems were based on the same flow Meters and meter readings used by the BCWSA to submit bills to the Debtor.

8.  **Agreement Not to Object to the Plan**.

The BCWSA agrees not to oppose and to support confirmation of the Debtor's Plan.

9.  **Payment of the BCWSA Allowed Claim.**

Provided that the Settlement Agreement has not been nullified under paragraph 12 below, the BCWSA Allowed Claim shall be paid in full using the Escrow Funds on the Sewer Dedication Date. If the Sewer Dedication Date has not occurred on or before the Effective Date, then the claim of the BCWSA (as evidenced by the BCWSA Proof of Claim) shall be deemed disputed as of and on the Effective Date. In the event that the Sewer Dedication Date occurs after the Effective Date (but prior to nullification of this Settlement Agreement under paragraph 12 below), then the claim of the BCWSA shall be allowed in accordance with paragraph 2 above, and shall be paid in full on

the Sewer Dedication Date using the Escrow Funds.

**10.    Mutual Releases.**

10.1    Release from the Debtor and Israel Feit to the BCWSA. Effective upon payment in full of the BCWSA Allowed Claim, the Debtor, its predecessors, agents, employees, shareholders, officers, directors, representatives, attorneys, accountants, and consultants (but only in such parties' capacities with the Debtor) and Israel Feit, in both his individual and corporate capacities (collectively, the "Debtor Releasors") hereby remise, release and discharge the BCWSA, its predecessors, agents, employees, officers, directors, representatives, attorneys, accountants, consultants and insurers (but only in said other parties' capacities as such)(collectively, the "BCWSA Releasees") of and from any and all actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the Debtor Releasors have or may have against the BCWSA Releasees arising out of, based upon or relating to the Bucks County Litigation, the Creekside Adversary Litigation, the Debtor's Bankruptcy Case, any other litigation pending or previously pending involving the Parties, the Creekside Claims, the SEWER SYSTEM, the Sewer Liens, the BCWSA Proof of Claim, the Debtor's sewage usage, the Property and/or the Federal Court action previously withdrawn without prejudice. Notwithstanding the foregoing, the release contained in Section 10.1 shall not apply with respect to amounts due and owing by the Debtor for sewage usage after May 1, 2015.

10.2    Release from the BCWSA to the Debtor and Israel Feit. Effective upon payment in full of the BCWSA Allowed Claim, the BCWSA, its predecessors, agents, employees, shareholders, officers, directors, representatives, attorneys, accountants, and consultants (but only in such parties'

capacities with the BCWSA) (collectively, the "BCWSA Releasors") remise, release and discharge the Debtor, its predecessors, affiliates, partners, agents, employees, officers, directors, partners, shareholders, representatives, successors, assigns, attorneys, accountants, consultants and insurers (but only in said other parties' capacities as such) and Israel Feit, in his individual and corporate capacities (collectively, the "Creekside Releasees"), of and from any and all actions, causes of action, claims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the BCWSA Releasors have or may have against the Creekside Releasees arising out of, based upon or relating to the Bucks County Litigation, the Creekside Adversary Litigation, the Debtor's Bankruptcy Case, any other litigation pending or previously pending involving the Parties, the Creekside Claims, the SEWER SYSTEM, the Sewer Liens, the BCWSA Proof of Claim, the Debtor's sewage usage, the Property and/or the Federal Court action previously withdrawn without prejudice. Notwithstanding the foregoing, the release contained in Section 10.2 shall not apply with respect to amounts due and owing by the Debtor for sewage usage after May 1, 2015.

11.    **Dismissal of Litigation.**

Promptly after payment in full of the BCWSA Allowed Claim, the Parties shall cause the dismissal <u>with prejudice</u> of the Creekside Adversary Litigation and the Bucks County Litigation.

12.    **Nullification of Settlement Agreement.**

In the event that the Sewer Dedication Date fails to occur on or before November 2, 2015, then: (i) this Settlement Agreement shall be rendered null and void; (ii) the parties shall be restored to their claims, defenses, positions and arguments as they existed prior to the entering into of this Settlement Agreement; and, (iii) the Escrow Funds shall remain in escrow pending the Bankruptcy

11

Court's resolution of the parties' disputes.

**13.     Miscellaneous.**

13.1     Incorporation of Background Paragraphs. Background paragraphs A. - T. above are incorporated herein by reference and shall be part of this Settlement Agreement and not merely recitals.

13.2     No admission of liability. The Parties have entered into this Settlement Agreement to achieve certainty and closure with respect to the disputes between them, and to avoid the inconvenience, expense and uncertainty of continued litigation. Neither Party has admitted liability to the other, with each continuing to dispute the validity of the other Party's claims or defenses, and no such admission shall be deemed by virtue of a Party's acceptance of this Settlement Agreement.

13.3     Further Instruments. The Parties shall execute any and all additional documents and to take such additional action as may be reasonably necessary to further effectuate or carry out the provisions and intent of this Settlement Agreement.

13.4     Successors and Assigns. The rights and obligations of the Parties under this Settlement Agreement shall inure to the benefit of and shall bind the Parties and their respective successors and assigns. The provisions of this Settlement Agreement relating to the SEWER SYSTEM and/or the future rates to be charged by the BCWSA for sewer services shall run with the land and shall benefit and be enforceable by all subsequent owners of the Property.

13.5     Counterparts. This Settlement Agreement may be executed in counterparts and by facsimile copy or electronic copy, each of which shall be considered an original but all of which shall constitute one agreement.

13.6     Retention of Jurisdiction; Enforcement of Settlement. The Parties request that the

Settlement Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Court in the Bankruptcy Proceeding. The Parties further agree that the Bankruptcy Court retain exclusive jurisdiction to enforce the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the day(s) and year set forth below.

| **CREEKSIDE ASSOCIATES, LTD.** | **BUCKS COUNTY WATER AND SEWER AUTHORITY** |
|---|---|
| By: _____ | By: _____ |
| Dated: June __, 2015 | Dated: June __, 2015 |

**ISRAEL FEIT** (solely for purposes of granting the release in Section 10.1 above)

Dated: June __, 2015

G:\Docs\Creekside\Bankruptcy\Settlement Agreement.smc revised.6-16-15.wpd

Settlement Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Court in the Bankruptcy Proceeding. The Parties further agree that the Bankruptcy Court retain exclusive jurisdiction to enforce the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the day(s) and year set forth below.

| CREEKSIDE ASSOCIATES, LTD. | BUCKS COUNTY WATER AND SEWER AUTHORITY |
|---|---|
| By: _ISRAEL FEIT_ | By: _____ |
| Dated: June 17, 2015 | Dated: June __, 2015 |

ISRAEL FEIT (solely for purposes of granting the release in Section 10.1 above)

Dated: June 17, 2015

G:\Docs\Creekside\Bankruptcy\Settlement Agreement.smc revised.6-16-15.wpd

13

Settlement Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Court in the Bankruptcy Proceeding. The Parties further agree that the Bankruptcy Court retain exclusive jurisdiction to enforce the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the day(s) and year set forth below.

| CREEKSIDE ASSOCIATES, LTD. | BUCKS COUNTY WATER AND SEWER AUTHORITY |
|---|---|
| By: _____ | By: _____ John Butler  C.O.O. |
| Dated: June __, 2015 | Dated: June 17, 2015 |

**ISRAEL FEIT** (solely for purposes of granting the release in Section 10.1 above)

Dated: June __, 2015

G:\Docs\Creekside\Bankruptcy\Settlement Agreement.smc revised.6-16-15.wpd

13