UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| In re: | : Chapter 11 |
|---|---|
|  | : |
| Creekside Associates, Ltd., | : Case No. 14-19952 (SR) |
|  | : |
| Debtor. | : |
|  | : |

## ORDER CONFIRMING SECOND AMENDED PLAN

AND NOW, this 17th day of June 2015, upon consideration of and after a confirmation hearing on the Second Amended Plan of Reorganization of Creekside Associates, Ltd. dated June 11, 2015 (the "Plan"), it is hereby determined that:

1. A disclosure statement has been approved by the Court pursuant to 11 U.S.C. § 1125;

2. The only impaired class has accepted the Plan. All other classes are unimpaired and therefore are conclusively presumed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f).

3. The Plan complies with the requirements of 11 U.S.C. §§ 1122 and 1123, and the requirements for confirmation set forth in 11 U.S.C. § 1129(a) and (b) have been satisfied.

It is hereby **ORDERED** that:

4. The Plan at Docket No. 212 is **CONFIRMED** and any objections to confirmation of the Plan have either been withdrawn or are overruled.

5. The Debtor[1] and its professionals have acted in "good faith" within the meaning of 11 U.S.C. § 1125(e) in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in activities described in Section

---

[1] Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan.

118217341_3

1125 of the Bankruptcy Code; therefore, the Debtor and its professionals are entitled to the protections afforded by 11 U.S.C. § 1125(e).

6. Pursuant to 11 U.S.C. § 1141(b) and (c), on the Effective Date all assets of the Debtor shall vest in the Reorganized Debtor, free and clear of all liens, claims, encumbrances and other interests, unless the Transfer Option is elected or deemed elected pursuant to Section 3.2(b)(ii) of the Plan, in which case all of the Debtor's rights, title and interest in the Settlement Property shall automatically be transferred to the Lender in accordance with the Plan. If the Debtor elects the Payment Option under Section 3.2(a)(i), the Reorganized Debtor shall be deemed to have incurred the obligations under the Exit Financing Facility pursuant to the Exit Facility Financing Agreement and other applicable Financing Documents (as defined below).

7. Except as otherwise provided in this Order or in the Plan, upon entry of this Order and conditioned upon the occurrence of the Effective Date, the Debtor shall be discharged of all Claims, debts and other obligations to the fullest extent permitted by 11 U.S.C. § 1141(d).

8. To the extent that the Debtor transfers or mortgages property, or makes delivery of an instrument of transfer or mortgage, including in connection with the Exit Financing Facility, pursuant to the Plan and as necessary to implement the Plan, such transfer or delivery shall not be taxed under any law imposing any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes or other similar taxes to the extent provided under 11 U.S.C. § 1146. The appropriate state or local government officials or agents shall, and are hereby directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment in accordance with 11 U.S.C. § 1146.

9. The conditions to confirmation as set forth in Section 6.8 of the Plan have been satisfied or waived or will be satisfied by the entry of this Order.

10. The discharge and injunction provisions set forth in Sections 7.2, 7.13, and 7.14 of the Plan and the Mutual Releases to be provided in accordance with Section 3.2(e) of the Plan are made in exchange for consideration, are in the best interests of the Debtor, the estate and holders of Claims and Interests and are fair, equitable and integrally necessary elements of the restructuring and resolution of this Chapter 11 case in accordance with the Plan. Nothing in Sections 7.13 or 7.14 of the Plan provides a release in favor of any third party of any Claims that arose prior to the commencement of this Chapter 11 case or a release beyond that which is permitted by the Bankruptcy Code.

11. The stay provided by Bankruptcy Rule 3020(e) shall not apply to this Order. Immediately upon the Effective Date, this Order and the terms of the Plan shall bind (a) the Debtor; (b) all holders of Claims and Interests; (c) any other party-in-interest in this Chapter 11 case; (d) anyone who made an appearance in this Chapter 11 case; and (e) each of the foregoing's respective heirs, successors, assigns, agents, attorneys, affiliates and beneficiaries.

12. The entry of this Order authorizes and directs the Debtor to take or cause to be taken all actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court, including but not limited to execution and delivery of the Deeds for transfer of the Settlement Property to the Lender and the execution of the Exit Financing Facility Agreement, the material terms of which are set forth in Exhibit 1 attached hereto.

13. The Debtor has disclosed all material facts regarding the Exit Financing Facility. The Reorganized Debtor's entry into the Exit Financing Facility is contemplated by the Plan and, if the Debtor elects the Payment Option, is in the best interests of the Debtor and the estate and does not conflict with applicable law. The terms and conditions of the Exit Financing Facility are fair and reasonable, reflect the exercise of prudent business judgment consistent with the Debtor's fiduciary duties and are supported by reasonable equivalent value and fair consideration. The Exit Financing Facility was negotiated at arms-length and in good faith without the intent to hinder, delay or defraud any creditor of the Debtor. The Debtor has provided sufficient and adequate notice of the Exit Financing Facility to all parties in interest in the Chapter 11 Case.

14. If the Debtor elects the Payment Option under Section 3.2(a)(i) of the Plan:

(a) Subject to, and upon the occurrence of, the Effective Date, and without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person (including any holders of Claims or Interests or the directors of the Reorganized Debtor), the Reorganized Debtor and as otherwise required by the Exit Facility Financing Agreement shall, and is hereby authorized to, enter into and perform under the Exit Financing Agreement and to execute and deliver the Exit Facility Financing Agreement and related documentation, agreements, instruments and certificates to which the Reorganized Debtor is contemplated to be a party on or after the Effective Date, including but not limited to any documents necessary to grant the requisite liens, guarantees and security interests, in each case consistent with the terms of the Plan and the Exit Facility Financing Agreement. This Confirmation Order shall be (i) an approval of the Exit Facility Financing Agreement, together

with any related guarantees and security documents (together, the "Financing Documents"), and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and (ii) authorization for the Reorganized Debtor to (x) enter into and execute the Exit Facility Financing Agreement, the other Financing Documents and such other documents as may be required to effectuate the Exit Facility Financing Agreement, (y) provide guarantees and grant the security interests pursuant to the Exit Facility Financing Agreement and other Financing Documents and (z) borrow under Exit Facility Financing Agreement and use the proceeds of such borrowings for any purpose permitted thereunder.

(b)     Executed versions of the Exit Facility Financing Agreement and other Financing Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms and not in contravention of any State law. The Exit Facility Financing Agreement and the other Financing Documents shall be deemed to have been entered in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Financing Agreement and the other Financing Documents shall be legal, binding and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Financing Agreement and the other Financing Documents and shall be deemed properly perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the

Exit Facility Financing Agreement. The Reorganized Debtor and the persons granted such liens and security interests are authorized to make all filings and recordings, and to obtain any governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically as of the Effective Date by virtue of this Confirmation Order, but subject to the occurrence of the Effective Date, and any such filings, recordings, approvals and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties. The Exit Financing Facility Lender under the Exit Facility Financing Agreement is hereby directed to execute the Exit Facility Financing Agreement and other applicable Financing Documents on or prior to the Effective Date, but, regardless of such execution, the Exit Financing Facility Lender shall be bound by and subject to the terms and conditions of the Exit Facility Financing Agreement and the other Financing Documents (including, without limitation, any indemnification obligations set forth therein).

15. As of the Effective Date of the Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of property and settle and compromise Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules provided, however, that if the Transfer Option is elected or deemed elected pursuant to Section 3.2(b)(ii) of the Plan, the Settlement Property shall automatically be transferred to the Lender in accordance with the terms of the Plan, and the

Debtor shall have no right or interest with respect to the Settlement Property or operation of the business.

16. Upon the occurrence of the Effective Date, any requirement that professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate and the Debtor may employ and pay all professionals in the ordinary course of business without any further notice to, action by, or order or approval of, the Bankruptcy Court or any other party.

17. The Debtor is authorized and directed to make all Adequate Protection payments to the Lender in accordance with Section 3.2(f) of the Plan notwithstanding the occurrence of the Effective Date.

18. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtor shall serve a copy of this Order on all known creditors and parties-in-interest by first-class mail, postage prepaid, within ten (10) business days after entry of this Order. Further, the Debtor shall file and similarly serve notice of the Effective Date of the Plan within ten (10) business days following the occurrence of the Effective Date. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

19. This Court shall retain personal and subject matter jurisdiction over post-confirmation disputes to the full extent allowed by federal bankruptcy law.

20. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

BY THE COURT:

Honorable Stephen Raslavich
United States Bankruptcy Judge

118217341_3

# EXHIBIT 1

# LOANCORE CAPITAL

## Summary of Principal Terms – Creekside Apartments

| | |
|---|---|
| **Property:** | A 1,026 unit apartment property located at 2500 Knights Road, Bensalem, PA 19020. |
| **Lender:** | LoanCore Capital or its affiliate ("**Lender**"). |
| **Borrower:** | A special purpose bankruptcy remote entity controlled by Israel Feit ("**Borrower's Sponsor**") that is formed exclusively for the purpose of owning and operating the Property. Borrower's form, structure and organizational documents shall be acceptable to Lender in its sole discretion and be consistent with prevailing rating agency standards with respect to special purposeness and bankruptcy-remoteness, including a structure utilizing two "independent directors" provided by a nationally recognized service company and delivery of a "non-consolidation" opinion by Borrower's counsel. |
| **Principal Amount:** | $65,000,000, subject to: |
| | (i) a maximum Loan-to-"as is" appraised value of 78.5% (based on a third party appraisal of the Property approved by Lender and prepared by a third party appraiser engaged by Lender), |
| | (ii) a minimum underwritten debt service coverage ratio of 1.30:1.00 (based upon the underwritten net cash flow of the Property determined by Lender in its sole discretion in accordance with Lender's underwriting standards and adjustments (the "**UNOI**") with an Interest Only constant; |
| | (iii) a minimum "**Debt Yield**" (the ratio of UNOI to the Principal Amount of the Loan) equal to or greater than **7.5%**; and |
| | (iv) assuming a $70,500,000 Kemper-Davidson loan payoff. |
| **Term:** | 27 months (the "**Initial Loan Term**" and together with any exercised Extension Period (defined below), the "**Loan Term**"). |
| **Extension:** | At Borrower's option, the maturity of the Loan may be extended for two 12-month periods (each, an "**Extension Period**"). Each Extension Period shall be contingent upon (i) no event of default existing, (ii) the Property having a minimum debt yield of 8.25% for the first Extension Period and a minimum debt yield of 8.50% for the second Extension Period and (iii) Borrower extending the LIBOR Cap described below. There is an extension fee of 0.25% of the then outstanding Principal Amount payable in connection with the first and second Extension Period. |
| **Interest Rate:** | Floating – priced at a spread over one-month LIBOR, payable monthly in arrears on the basis of actual days elapsed and a 360 day year. |

| | |
|---|---|
| **Interest Rate Protection Agreements:** | As a condition to closing the Loan, Borrower's Sponsor will be required to purchase a LIBOR cap (the "**LIBOR Cap**") effective at closing, in form and substance reasonably acceptable to Lender, from a financial institution acceptable to Lender, which will have a strike price of 2.00% on a notional principal amount equal to the Principal Amount of the Loan. |
| **LIBOR Floor:** | 0.25%. |
| **Amortization:** | Interest only during the Initial Loan Term. During the Extension Periods, the Loan will amortize on a 30 year schedule. |
| **Origination Fee:** | 1.0% of the Principal Amount, payable at closing. |
| **Recourse:** | The Loan will be non-recourse except for environmental indemnification and Lender's standard carve-outs for "bad acts" which shall be recourse to Borrower and a creditworthy person and/or entity acceptable to Lender, on a joint and several basis.<br><br>Throughout the term of the Loan, the guarantor shall maintain a minimum net worth and minimum liquidity acceptable to Lender. |
| **Reserves:** | Borrower will establish and maintain reserves for existing deferred maintenance, ongoing taxes and insurance premiums, capital expenditures, and such other purposes as Lender shall determine to be necessary as a result of its due diligence review.<br><br>Deferred Maintenance Reserve: The deferred maintenance reserve will be funded at closing and will be 125% of the amount specified in the property condition report obtained by Lender during its due diligence review.<br><br>Capital Expenditure Reserve: The capital expenditure reserve will be required to be funded at closing, Lender is anticipating an initial deposit of $1,000,000 into the account.<br><br>Replacement Reserve: The ongoing replacement reserve will be funded monthly in an amount equal to $1/12^{th}$ of $300 per unit per annum (or such larger amounts determined by Lender as a result of its due diligence review). |
| **Cash Management:** | Soft lockbox and Springing Cash Management. |
| **Additional Financing:** | No additional financing or monetary encumbrances of the Property, or of the equity in Borrower, shall be permitted during the Loan Term. |
| **Assumability:** | Not assumable. |
| **Closing:** | Anticipated to occur on or before August 14, 2015. |
| **Loan Documents:** | The Loan will be evidenced by Lender's standard documentation which will contain provisions consistent with the terms of this Summary of Principal Terms, as well as other representations, |

warranties and covenants of Borrower appropriate or customary for similar transactions.